Filed:  November 15, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 96-1127
(CA-95-332-3-MU)

———————————

Arthur Wrightson,

                              Plaintiff - Appellant,

          versus

Pizza Hut of America, Inc.,

                              Defendant - Appellee.

———————————

O R D E R

———————————

     The Court amends its opinion filed October 31, 1996, as follows:

     On page 3, first full paragraph, line 5 -- the period after the closing parenthesis is deleted.

     On page 3, second full paragraph, line 2 -- the comma after "Wrightson" is deleted.

     On page 6, footnote 1, line 20 -- the text is changed to read: "a dissent in <u>McWilliams</u> v. <u>Fairfax County Board of Supervisors</u>, 72 F.3d 1191 (4th Cir. 1996), <u>cert. denied</u>, ___ S. Ct. ___, 1996 WL 324733 (1996)."

On page 6, footnote 1, line 25 -- the text is corrected to read "under Title VII.  <u>See Garcia</u>, 28 F.3d at 451-452, and ...."

On page 8, footnote 2, line 6 -- the text is changed to read "the Justices in <u>Price Waterhouse</u> was over which party ...."

On page 12, third full paragraph, line 4 -- the citation to <u>Harris</u> is corrected to read "510 U.S. 17, 21 (1993)."

On page 13, first paragraph, lines 1-2 -- the citation to <u>McDonald</u> is corrected to read "427 U.S. 273, 279-80 (1976)."

For the Court - By Direction


/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ARTHUR WRIGHTSON,
<u>Plaintiff-Appellant,</u>

v.                                                            No. 96-1127

PIZZA HUT OF AMERICA, INC.,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-95-332-3-MU)

Argued: September 23, 1996

Decided: October 31, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and
HALLANAN, United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Reversed by published opinion. Judge Luttig wrote the majority opin-
ion, in which Judge Hallanan joined. Judge Murnaghan wrote a dis-
senting opinion.

_____

**COUNSEL**

**ARGUED:** George Bryan Adams, III, WAGGONER, HAMRICK,
HASTY, MONTEITH & KRATT, P.L.L.C., Charlotte, North Caro-
lina, for Appellant. Edward Laughtin Eatman, Jr., Paul Christopher
Lawrence, HEDRICK, EATMAN, GARDNER & KINCHELOE,

L.L.P., Charlotte, North Carolina, for Appellee. **ON BRIEF:** William Howard Elam, WISHART, NORRIS, HENNINGER & PITTMAN, Charlotte, North Carolina; June K. Allison, WISHART, NORRIS, HENNINGER & PITTMAN, Burlington, North Carolina, for Appellant.

_____

## OPINION

LUTTIG, Circuit Judge:

Plaintiff-appellant Arthur Wrightson, formerly an employee of defendant-appellee Pizza Hut of America, Inc., appeals the dismissal under Federal Rule of Civil Procedure 12(b)(6) of his Title VII claim against Pizza Hut. Wrightson, a heterosexual male, alleges that his homosexual male supervisor and other homosexual male employees at Pizza Hut subjected him to a "hostile work environment" in violation of Title VII. The district court dismissed Wrightson's claim, holding that same-sex sexual harassment is not actionable under Title VII. For the reasons that follow, we reverse.

I.

Because Wrightson challenges the district court's dismissal of his complaint under Federal Rule of Civil Procedure 12(b)(6), we accept as true for purposes of this appeal the facts as alleged in his complaint and attached affidavits. Martin Marietta v. Intern. Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992).

Wrightson, a heterosexual male, was sixteen years old when, from March of 1993 until March of 1994, he was employed as a cook and waiter at Pizza Hut store number 618041, located at 8800 Pineville-Matthews Road, Charlotte, North Carolina. During that time, Bobby Howard, an openly homosexual male, J.A. at 8-10, 48, 56, 60, was Wrightson's immediate supervisor. Wrightson's co-workers included five openly homosexual males -- Leonard Wilson, Brandon Johnson, David Jackson, Shane Campbell, and Billy (last name unknown). J.A. at 8-10, 48, 51, 56, 60. Three of Wrightson's co-workers were heterosexual males -- Michelangelo Macri, Brad Wentzel, and Aaron George Sim. J.A. at 48-62.

2

In November or December of 1993, Howard and the other homosexual male employees began sexually harassing Wrightson and the other heterosexual male employees. (Wrightson does not allege that the homosexual employees harassed either female employees or homosexual male employees.) After Pizza Hut hired a male employee, the homosexual employees attempted to learn whether the new employee was homosexual or heterosexual. J.A. at 53. If the employee was heterosexual, then the homosexual employees began to pressure the employee into engaging in homosexual sex. J.A. at 53. The harassment continued during working hours "on a daily basis," J.A. at 8, for seven months, in the presence of and within the knowledge of upper management. Indeed, the harassment continued even after Wrightson complained to management.

The harassment of Wrightson took the form of sexual advances, in which Howard graphically described homosexual sex to Wrightson in an effort to pressure Wrightson into engaging in homosexual sex. J.A. at 8, 49. As alleged in the complaint,

> during working hours [Howard] made numerous comments to [Wrightson] of a graphic and explicit nature wherein Howard . . . would graphically describe his homosexual lifestyle and homosexual sex, would make sexual advances towards [Wrightson], would subject [Wrightson] to vulgar homosexual sexual remarks, innuendos and suggestions, and would otherwise embarrass and humiliate [Wrightson] by questioning [him] as to why he did not wish to engage in homosexual activity and would encourage and invite [Wrightson] to engage in such homosexual activity.

J.A. at 8. In addition, Howard repeatedly touched Wrightson in sexually provocative ways. On several occasions, for example, Howard ran his hands through Wrightson's hair, massaged Wrightson's shoulders, purposely rubbed his genital area against Wrightson's buttocks while walking past him, squeezed Wrightson's buttocks, and pulled out Wrightson's pants in order to look down into them. J.A. at 9, 12. While touching Wrightson, Howard made sexually explicit comments, described homosexual sex, and invited Wrightson to engage in homosexual sex. Id.

3

Macri, Wentzel, and Sim were similarly pressured by Howard to engage in homosexual sex. Howard physically touched, and made sexual comments to, all three employees, explicitly describing homosexual sex to them and inviting them to engage in homosexual sex. J.A. at 49, 50, 57, 60, 61. For example, on one occasion, Howard suggested to Macri and Wrightson that they should try what Howard called the "golden enema," referring to anal sex. J.A. at 51. On another occasion, Howard attempted to kiss Macri as Macri left the Pizza Hut. J.A. at 50. As with Wrightson, Howard massaged these employees' shoulders and rubbed his genital area against their buttocks while making sexually explicit comments to them. J.A. at 50, 60.

Although Howard's conduct was the most egregious, J.A. at 49, 57, 60, the other homosexual employees engaged in a similar pattern of harassment of Wrightson, J.A. at 9-10, and his heterosexual co-workers. For example, Jackson once described to the heterosexual males how he wanted to have his teeth removed in order to give better oral sex. J.A. at 51. On another occasion, Wilson called Wentzel at Wentzel's home and asked him on a date, even though Wilson was aware that Wentzel was heterosexual. J.A. at 58. Wilson also told Macri that he thought Wrightson was "cute," and joked that Wrightson was able to get work-breaks because he performed oral sex. J.A. at 52.

Wrightson and the other heterosexual males made it absolutely clear to Howard and the homosexual employees that the harassment was unwelcome. Wrightson, for example, specifically told Howard and the others to stop the harassment on numerous occasions. J.A. at 10-16, 55. Macri told the homosexual males that if they did not stop, he would file a complaint against them. J.A. at 52. Wentzel told the homosexual employees to "shut up" each time they directed a sexual comment toward him. J.A. at 58. Sim also repeatedly complained to Howard about the harassment. J.A. at 61. Notwithstanding these protests, the harassment continued.

The manager of the Pizza Hut, Jennifer Tyson, and the assistant manager, Romeo Acker, were aware of the harassment and of the heterosexual males' objections to it. According to the complaint, "[Wrightson] . . . and his mother, Cathy Celentano, complained on numerous occasions to [Wrightson's] immediate supervisors, store

4

managers of the subject Pizza Hut and other supervisors and managers of [Pizza Hut] about the verbal and physical sexual harassment which was being directed at [Wrightson] by [Pizza Hut's] employees." J.A. at 10-11. Tyson and Acker even personally witnessed the harassment on several occasions. J.A. at 61. Neither Tyson nor Acker, however, took any disciplinary action against Howard or the others. J.A. at 12-14, 54, 59, 61-62. After one incident, Wrightson's mother complained directly to Acker and Tyson about the harassment. J.A. at 12. Tyson admitted to Wrightson's mother that she was aware of the harassment and also that Howard's actions constituted sexual harassment, but she contended that she was unable to control Howard. J.A. at 13. At one point, Tyson even called a meeting at which she ordered the homosexual employees to stop harassing Wrightson and the others, and advised them that their conduct violated federal law. J.A. at 13. After this meeting, the homosexual employees joked about the possibility of a federal sexual harassment suit, J.A. at 13-14, and the harassment continued and "intensified," J.A. at 11-12, 14. Tyson and Acker took no formal action against Howard or the other homosexuals at any time. J.A. at 13-14, 54, 59, 61-62.

On August 15, 1995, Wrightson filed this action against Pizza Hut in the United States District Court for the Western District of North Carolina, Charlotte Division, alleging that he had been sexually discriminated against, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Specifically, Wrightson alleged that, because of the actions of Howard and the other homosexual employees, he had been subjected to a "hostile work environment" in violation of Title VII, as interpreted by the Supreme Court in Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986).

Relying on the Fifth Circuit's holding in Garcia v. Elf Atochem North America, 28 F.3d 446, 451-52 (5th Cir. 1994), that "harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones," the district court held that no Title VII cause of action lies where the perpetrator of the sexual harassment and the target of the harassment are of the same sex. The district court therefore dismissed Wrightson's complaint under Federal Rule of Civil Procedure 12(b)(6).

5

II.

A.

Wrightson contends on appeal that the district court erred in dismissing his claim because a claim of same-sex sexual harassment under Title VII may lie where the perpetrator of the sexual harassment is homosexual.**1**

We first addressed the issue of same-sex sexual harassment only recently in McWilliams v. Fairfax County Board of Supervisors, 72 F.3d 1191 (4th Cir. 1996), cert. denied, ___ S. Ct. ___, 1996 WL 324733 (1996). There, we held that no Title VII cause of action for

_____

**1** Although no circuit has squarely addressed this issue, several circuits have suggested that a same-sex sexual harassment claim under Title VII may lie in at least some circumstances. See Quick v. Donaldson Co., 90 F.3d 1372 (8th Cir. 1996) (denying summary judgment in hostile work environment suit where male employee claimed harassment by male co-workers); Barnes v. Costle, 561 F.2d 983, 990 n.55 (D.C. Cir. 1977) ("[T]he legal problem would be identical to that confronting us now" if a "subordinate of either gender [was sexually harassed] by a homosexual superior of the same gender."); Bundy v. Jackson, 641 F.2d 934, 942 n.7 (D.C. Cir. 1981); McDonnell v. Cisneros, 84 F.3d 256, 260 (7th Cir. 1996) (noting that "a difference in sex is not a necessary condition of sexual activity and hence (most courts think) of sexual harassment."); Baskerville v. Culligan Int'l. Co., 50 F.3d 428, 430 (7th Cir. 1995) ("[W]e do not mean to exclude the possibility that sexual harassment of . . . men by other men, or women by other women would not also be actionable in appropriate cases."); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994) ("[W]e do not rule out the possibility that both men and women working [for the defendant] have viable claims against [a male supervisor] for sexual harassment."), cert. denied, 115 S. Ct. 733 (1995). Recently, in a dissent in McWilliams v. Fairfax County Board of Supervisors, 72 F.3d 1191 (4th Cir. 1996), cert. denied, ___ S. Ct. ___, 1996 WL 324733 (1996), and in a separate concurrence in Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 752 (4th Cir. 1996), our colleagues Judges Michael and Niemeyer, respectively, similarly interpreted Title VII. The Fifth Circuit, in contrast, has held in two cases that same-sex sexual harassment claims are not cognizable under Title VII. See Garcia, 28 F.3d at 451-452 and Oncale v. Sundowner Offshore Services, Inc., 83 F.3d 118, 119-20 (5th Cir. 1996). In neither of these cases was there an allegation that either the harasser or the victim of the harassment was homosexual.

"hostile work environment" sexual harassment lies when both the perpetrator and target of the harassment are heterosexuals of the same sex. Id. at 1195. In McWilliams, however, we expressly reserved the question of whether Title VII prohibits same-sex "hostile work environment" harassment where the perpetrator of the harassment is homosexual. Id. at 1195 n.4. Today, we squarely address this issue, and hold that a claim under Title VII for same-sex "hostile work environment" harassment may lie where the perpetrator of the sexual harassment is homosexual.

Title VII provides in relevant part that,

> [i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex .. . .

42 U.S.C. § 2000e-2(a)(1). The "work environment" constitutes a "term[ ], condition[ ], or privilege[ ] of employment." Meritor Savings Bank, 477 U.S. at 64-67. Therefore, "a cause of action [exists] under Title VII for persons forced to work in an environment where sexual harassment has created a hostile or abusive atmosphere." Swentek v. USAIR, Inc., 830 F.2d 552, 557 (4th Cir. 1987); see also Meritor Savings Bank, 477 U.S. at 73. In order to prevail on a "hostile work environment" sexual harassment claim, an employee must prove: (1) that he was harassed "because of" his "sex"; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. McWilliams, 72 F.3d at 1195; Swentek, 830 F.2d at 557. The district court below interpreted Title VII to require also that the perpetrator of the "hostile work environment" sexual harassment be of a different sex than the target of the harassment in order for the harassment to be cognizable under Title VII. We discern no such requirement in the statute.

Title VII broadly prohibits "employers" (whether male or female) from discriminating against "individual" employees (whether they be male or female) on the basis of the latter's "sex," or gender. Through its proscription of "employer" discrimination against "individual"

7

employees, the statute obviously places no gender limitation whatso-ever on the perpetrator or the target of the harassment. Therefore, the only possible source of a condition that the harasser and victim be of different sexes is Title VII's causal requirement that the discrimina-tion be "because of" the employee's sex. In this causal requirement we find no such limitation either.

An employee is harassed or otherwise discriminated against "be-cause of" his or her sex if, "but-for" the employee's sex, he or she would not have been the victim of the discrimination. See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Fuller v. Phipps, 67 F.3d 1137, 1144 (4th Cir. 1995).**2** As a matter both of textual interpre-tation and simple logic,**3** an employer of either sex can discriminate against his or her employees of the same sex because of their sex, just as he or she may discriminate against employees of the opposite sex because of their sex. That is, a male employer who discriminates only against his male employees and not against his female employees, and a female employer who discriminates against her female employees and not against her male employees, may be discriminating against his or her employees "because of" the employees' sex, no less so than may be the employer (male or female) who discriminates only against his or her employees of the opposite sex. In all four instances, it is possible that the employees would not have been victims of the employer's discrimination were it not for their sex. There is, in other words, simply no "logical connection" between Title VII's require-

_____

**2** It is plain from the several opinions in Price Waterhouse that all nine Justices agreed that "but-for" causation is the appropriate standard under Title VII. See Price Waterhouse, 490 U.S. at 242 (plurality opinion), 259-60 (White, concurring in the judgment), 262 (O'Connor, concurring in the judgment), 282 (Kennedy, dissenting). The disagreement among the Justices in Price Waterhouse was over which party should bear the burden of proving "but-for" causation and at which stage of the litigation. See id. at 244-45, 259-260, 279, 295.

**3** As the Supreme Court noted in Meritor Savings Bank, "[t]he prohibi-tion against discrimination based on sex was added to Title VII at the last minute on the floor of the House of Representatives . . . . [T]he bill quickly passed . . . and we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on `sex.'" 477 U.S. at 63-64.

8

ment that the discrimination be "because of" the employee's sex and a requirement that a harasser and victim be of different sexes. Cf. O'Connor v. Consolidated Coin Caterers Corp. , 116 S. Ct. 1307, 1310 (1996).

Although the EEOC's interpretation of Title VII is not binding upon us, the Commission has long so interpreted this antidiscrimination provision. The EEOC compliance manual specifically states:

> The victim does not have to be of the opposite sex from the harasser . . . . [T]he crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (not on the victim's sexual preference) and the harasser does not treat employees of the opposite sex the same way.

EEOC Compliance Manual (CCH) § 615.2(b)(3) (1987). Indeed, the EEOC addresses the very circumstance before us, concluding, as we do, that a claim under Title VII may lie:

> Example 1 -- If a male supervisor of male and female employees makes unwelcome sexual advances toward a male employee because the employee is male but does not make similar advances toward female employees, then the male supervisor's conduct may constitute sexual harassment since the disparate treatment is based on the male employee's sex.

Id. at § 615.2(b)(3).

Accordingly, we hold that a same-sex "hostile work environment" sexual harassment claim may lie under Title VII where a homosexual male (or female) employer discriminates against an employee of the same sex or permits such discrimination against an employee by homosexual employees of the same sex.

Here, Wrightson, a young male, has alleged that his male supervisor and certain of his male co-workers are homosexual. He has further

9

alleged that, "because of his sex" and for the purpose of forcing him to engage in homosexual sex, he was discriminated against by his homosexual supervisor and homosexual co-workers. He has alleged that he objected to and resisted these sexual overtures. He has alleged that the harassment took place over a lengthy period of time, with the full knowledge and acquiescence of Pizza Hut management. And he has alleged only that young male employees of Pizza Hut were subjected to the sexual overtures by the supervisor and co-workers. It may ultimately be established that Pizza Hut's homosexual employees harassed young males and females alike, that Wrightson was harassed simply because he was heterosexual, or, as in McWilliams, that the offensive conduct was the product solely of puerility or perversion. But, as pled, Wrightson's Title VII claim is not subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) as a claim upon which no relief could be granted regardless of the facts. He has presented a cognizable claim not only that he was sexually harassed by his homosexual supervisor and co-workers, but also that he would not have been harassed but for the fact that he is a male.

B.

Pizza Hut contends that, even assuming a claim for same-sex harassment lies under Title VII, the district court's dismissal must be upheld because Wrightson's claim actually is not that he was harassed because of his sex, but, rather, that he was harassed because of his sexual orientation as a heterosexual.

The short answer to this contention is that, while it is true Title VII does not afford a cause of action for discrimination based upon sexual orientation, see Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989) ("Title VII does not prohibit discrimination against homosexuals."), cert. denied, 110 S. Ct. 1158 (1990); DeSantis v. Pacific Telephone & Telegraph Co., 608 F.2d 327, 329-30 (9th Cir. 1979) ("Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality."), Wrightson does not allege that he was discriminated against because he is heterosexual. He specifically alleges in his complaint that he was discriminated against "because of his sex, male," J.A. at 5. The unequivocal allegation that he was discriminated against "be-

10

cause of his sex," which, for purposes of Rule 12(b)(6) must be accepted as true, is alone sufficient to withstand Pizza Hut's motion to dismiss, and more than adequate when coupled with his allegations that the harassers were homosexual and that other males (and no females) were the targets of the harassment. Of course, even had Wrightson alleged that he was discriminated against both because he was heterosexual and because he was male, he would still state a claim under Rule 12(b)(6). As the Court recognized in Price Waterhouse, a Title VII cause of action lies even though the discrimination against the employee is not "solely" because of the employee's sex, as long as the employee's sex was a cause of the discrimination. See 490 U.S. at 241 (plurality opinion) ("[S]ince we know that the words `because of' do not mean `solely because of,' we also know that Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations."); id. at 284 (Kennedy, dissenting) ("No one contends . . . that sex must be the sole cause of a decision before there is a Title VII violation.").

* * * * *

In holding, as we do today, that a claim may lie under Title VII for same-sex hostile work environment harassment, we recognize and appreciate the reasons for the reticence of many of the federal courts to recognize a cause of action under Title VII for same-sex discrimination. We, as they, have no doubt that such an expanded interpretation of Title VII will result in a significant increase in litigation under this antidiscrimination provision. Ultimately, however, our role as courts is limited to faithfully interpreting the statutes enacted by the Congress and signed into law by the President. And where Congress has unmistakably provided a cause of action, as it has through the plain language of Title VII, we are without authority in the guise of interpretation to deny that such exists, whatever the practical consequences.

Therefore, because a claim may lie under Title VII for same-sex hostile work environment sexual harassment where, as here, the individual charged with the discrimination is homosexual, the judgment of the district court is reversed.

REVERSED

11

MURNAGHAN, Circuit Judge, dissenting:

At the Federal Rule of Civil Procedure 12(b)(6) stage at which the case now stands, no doubt exists that the homosexual harassers of Wrightson, a heterosexual, could be found liable for breaking the law and held responsible for damages. State causes of action for assault, assault and battery, and intentional infliction of emotional distress readily come to mind. Moreover, Pizza Hut, as an employer, allegedly took grossly inadequate steps to halt the behavior of Howard and the other homosexuals and should be held liable to Wrightson too, perhaps on respondeat superior grounds, if not directly. As to the potential liability of Pizza Hut, Howard, and the other homosexual harassers, I do not have any disagreement with the majority.

I can not, however, agree with the majority's transformation of Title VII to provide a remedy for all distasteful workplace conduct. As the court has stated previously, "[e]very example of offensive and tasteless workplace conduct does not provide the basis of a cause of action under Title VII." Hopkins v. Baltimore Gas and Electric Co., 77 F.3d 745, 755 (4th Cir.), cert. denied, 65 U.S.L.W. 3240, 65 U.S.L.W. 3257 (U.S. Oct. 7, 1996) (No. 95-1961) (Judge Wilkinson and Judge Hamilton concurring in part). To interpret Title VII's prohibition of discrimination "because of" sex to allow for the federal recognition of a same-sex harassment claim, i.e. heterosexual male on one side, homosexual male on the other, whereby the heterosexual alleges that he was discriminated against because of his sex, is to stretch Title VII's "because of" sex language to include "unmanageably broad protection of the sensibilities of workers simply `in matters of sex.'" McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1196 (4th Cir.), cert. denied 65 U.S.L.W. 3240, 65 U.S.L.W. 3257 (U.S. Oct. 7, 1996) (No. 95-1983).

The majority does not dispute that when Title VII was enacted Congress was concerned with discrimination against women by men in the workplace. Title VII, however, does not only apply to women. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) ("The phrase `terms, conditions, or privileges of employment' evinces a congressional intent `to strike at the entire spectrum of disparate treatment of men and women' in employment ..."); see also Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1377

12

(8th Cir. 1996), citing <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 279-80 (1976) ("Congress did not limit Title VII protections to only women or members of a minority group."). Rather, Title VII represents Congress' concern with the creation of workplace equality for women and men.

As the majority points out, sparse legislative history exists to guide the courts as to the meaning of the term "sex" as used within the Title VII context. <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 63-64 (1986). The majority treats the absence of legislative history as a license to "legislate" and impermissibly to rewrite Title VII to include claims never intended, nor contemplated, by Congress. The majority's approach ignores the context within which Congress enacted Title VII. The absence of legislative history to guide the courts can be read in either of two ways. Either, as the majority argues, Congress' failure to exclude the possibility of same sex claims should be interpreted as allowing for such claims. Or, Congress simply never fathomed that Title VII would be used in the manner in which the majority today holds, and hence, Congress, not the courts, should address, in the first instance, whether Title VII's "sex" language should apply when a heterosexual male alleges that he was harassed by a homosexual male. The instant case demonstrates the wisdom of the Constitution's three branches of government, which leaves to the legislative branch, not the judiciary, the task of making the law.

Therefore, in the absence of any legislative history addressing the inquiry before the court, the O.E.D. dictionary definitions of sex should be employed as guides. The dictionary defines "sex" as, "[e]ither of the two divisions of organic beings distinguished as male and female respectively, the males or the females . . . viewed collectively," or of "sexual" as, "[o]f or pertaining to sex or the attribute of being either male or female."

As "[s]exual" activity between two male, or female, heterosexuals does not fall within Title VII's ambit, <u>McWilliams</u>, 72 F.3d at 1196, neither logically may "sexual" activity between two male, or female, homosexuals be actionable. See <u>Williamson v. A.G. Edwards & Sons, Inc.</u>, 876 F.2d 69 (8th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1089 (1990); <u>DeSantis v. Pacific Telephone & Telegraph Co.</u>, 608 F.2d 327 (9th Cir. 1979). <u>Williamson</u> and <u>DeSantis</u> render illogical a conclusion that

13

a heterosexual and a homosexual situation involving two males is one falling under Title VII because of the sex of one of the protagonists.

As the Fifth Circuit stated in Garcia v. Elf Atochem North America, 28 F.3d 446, 451-52 (5th Cir. 1994):

> harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination.*

In the instant case, both parties are male, though Howard's group is homosexual and Wrightson is heterosexual. To hold Title VII applicable to heterosexual/homosexual but not to heterosexual/ heterosexual conduct produces a result more discriminatory than a ruling following Garcia that same sex discrimination is not covered by Title VII. The statute was intended to lessen, not to increase, dis- crimination.

Another panel of the court in McWilliams held that same sex het- erosexual on heterosexual harassment is not actionable. If McWilliams were read with the single factual difference being proof by the plaintiff that he was homosexual rather than heterosexual, I do not envision that the disgusting remarks not found to be actionable under Title VII would become so where the behavior on one side was heterosexual and the other homosexual. As the court stated in McWilliams:

> There perhaps "ought to be a law against" such puerile and repulsive workplace behavior even when it involves only heterosexual workers of the same sex, in order to protect the victims against its indignities and debilitations, but we con- clude that Title VII is not that law.

McWilliams, 72 F.3d at 1196.

Wrightson, if he proves what he alleges, should recover for the

_____

* See Goluszek v. Smith, 697 F. Supp. 1452, 1456 (N.D. Ill. 1988).

14

torts against him, but Title VII was not intended, nor does the statute provide, a path for Wrightson to obtain the relief he seeks. Accordingly, I dissent.

15