**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JERRY G. MAYO,
Plaintiff-Appellant,

v.

KIWEST CORPORATION; AMGULF

CORPORATION,
Defendants-Appellees.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

No. 95-2638

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-832-A)

Argued: June 5, 1996

Decided: August 15, 1996

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mary Ann Kelly, FITE, O'BRIEN & BYRUM, LTD.,
McLean, Virginia, for Appellant. John Clifton Rand, Alexandria, Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-Appellant Jerry Mayo (Mayo) appeals the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal of his claims against Defendants-Appellees, Kiwest Corporation and Amgulf Corporation, alleging sexual harassment that created a hostile workplace environment, discriminatory discharge, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §§ 2000e to 2000e-17. For the reasons that follow, we affirm.

I.

Because this appeal stems from a dismissal under Federal Rule of Civil Procedure 12(b)(6), we recite the facts as alleged in Mayo's complaint and must take them as true. See Martin Marietta v. Intern. Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992).

In October 1993, two related Virginia companies in the business of general contracting, construction management, and real estate management, Kiwest Corporation and Amgulf Corporation (collectively Kiwest), hired Mayo to perform construction remodeling and maintenance work. Richard Flanagan supervised Mayo at Kiwest. After Mayo had worked several months for Kiwest, he was asked to sign an employment agreement. After Mayo voiced concerns regarding the legality and fairness of the agreement, Flanagan fired him on behalf of Kiwest.

Kiwest rehired Mayo in April 1994, after he complained to Kiwest about the circumstances of his firing. Upon rehiring Mayo, Kiwest promoted him to a supervisory position. Flanagan continued to serve as Mayo's immediate supervisor.

Soon after Mayo returned to work at Kiwest, Flanagan mounted a campaign of intimidation and harassment against Mayo that included

2

verbal and physical conduct. With respect to the verbal conduct, Flanagan repeatedly made sexually explicit and vulgar comments to Mayo. For instance, Flanagan told Mayo "you smell good enough to fuck," "blow me," "suck me," and"lick my sack." (J.A. 9). Furthermore, Flanagan repeatedly spoke of the idea of having oral sex with Mayo. Flanagan also teased Mayo by telling him and subordinate employees that Mayo was a fag and a queer. With respect to the physical conduct, Flanagan grabbed and fondled Mayo's buttocks and genitals in a sexual manner on several occasions. On still other occasions, Flanagan surprised Mayo from behind by deliberately poking his anal area with a wooden dowel. On yet other occasions, Flanagan kissed Mayo on the cheek. Flanagan often engaged in this verbal and physical conduct in the presence of other Kiwest employees.

Mayo repeatedly asked Flanagan to stop his intimidating and harassing behavior, including asking Flanagan to stop telling other employees that he was homosexual. Often, Flanagan laughed in response and several times Flanagan threatened that if Mayo did not stop complaining he would be fired.

Despite Mayo's repeated requests that Flanagan stop suggesting to other Kiwest employees that he was homosexual, Flanagan continued to do so and widely published a staged photo of Mayo wearing only a pair of black underwear that Flanagan had falsely created by superimposing a photo of Mayo's head onto the body of another man.

Mayo considered Flanagan's conduct unwelcome, highly offensive, and abusive. Consequently, Mayo complained about Flanagan's conduct to Kiwest's President and Director, James Rand. In response, Rand placed Mayo on administrative leave and promised Mayo that he would investigate the allegations.

On or about February 19, 1995, Mayo received a letter from Kiwest's in-house counsel and corporate secretary, Stanley Wagner. In the letter, Wagner requested that Mayo meet with him. Wagner also informed Mayo in the letter that he would investigate Mayo's allegations. Mayo and Wagner met the next week. Mayo provided Wagner with additional information regarding his allegations against Flanagan.

3

Approximately one month later, Mayo received a letter from Wagner stating that his investigation revealed Mayo's allegations against Flanagan to be without merit, that Mayo was guilty of wrongdoing, and that Mayo was fired. According to Mayo, Kiwest falsely accused him of wrongdoing in this letter.

Following Mayo's firing, Kiwest challenged Mayo's application for unemployment compensation benefits based on its same accusations of wrongdoing. Kiwest also ended a month to month landlord/ tenant relationship with Mayo in which Mayo rented an apartment from Kiwest. This rental situation had nothing to do with Kiwest and Mayo's employer/employee relationship.

At all times relevant to this case, Mayo performed his work for Kiwest in a highly competent and professional manner.

After receiving a right to sue letter from the Equal Employment Opportunity Commission (EEOC), Mayo filed suit against Kiwest in federal district court for the Eastern District of Virginia on June 20, 1995. His complaint alleged three counts under Title VII, sexual harassment that created a hostile workplace environment, discriminatory discharge on account of sex, and retaliatory discharge and other acts of retaliation in response to complaints of sex discrimination to Kiwest management; and three counts under Virginia law, intentional infliction of emotional distress, wrongful termination, and assault and battery.

Ten days after Mayo filed his complaint, Kiwest moved to dismiss all six counts of the complaint under Federal Rule of Civil Procedure 12(b)(6). Kiwest argued that Mayo's claims of sexual harassment and discriminatory discharge on account of sex should be dismissed because Title VII does not provide a cause of action for same-sex sex discrimination. Kiwest also argued that Mayo's retaliation claim should be dismissed because Mayo did not have a reasonable belief that he was being discriminated against. Finally, Kiwest argued that if the district court dismissed these three federal claims, then the state claims should be dismissed for lack of subject matter jurisdiction. Kiwest answered the complaint on August 8, 1995, and filed a counterclaim alleging defamation and slander.

4

On August 8, 1995, the district court dismissed Mayo's sexual harassment and discriminatory discharge claims with prejudice and Mayo's three state claims without prejudice. In dismissing Mayo's sexual harassment and discriminatory discharge claims, the district court concluded that Title VII does not provide a remedy for same-sex sex discrimination. On August 28, 1995, the district court filed an amended order also dismissing Mayo's retaliation claim with prejudice. In dismissing Mayo's retaliation claim, the district court concluded that, based on existing case law in the Fourth Circuit at the time Mayo filed his charge of discrimination, Mayo's belief that he was being discriminated against was not reasonable and could not support an independent claim of retaliation.

Mayo filed a notice of appeal on September 5, 1995, stating that he was appealing the August 8 order and August 28 amended order. On September 11, 1995, the district court filed an order dismissing Kiwest's joint counterclaim without prejudice. Although Mayo did not file a new notice of appeal, we have previously determined that his notice of appeal was timely.[1]

II.

Mayo first challenges the dismissal of his claim alleging same-sex sexual harassment. According to Mayo, the district court wrongly concluded that a claim alleging same-sex sexual harassment is not actionable under Title VII. We do not reach the issue of whether same-sex sexual harassment is actionable under Title VII because our recent decision in McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191 (4th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3839 (U.S. June 10, 1996) (No. 95-1983), compels our affirmance of the district court's dismissal on the ground that both Mayo and Flanagan were indisputably males, and no claim is made that either was homosexual or bisexual. Id. at 1195 & n.5.

_____

[1] Citing Federal Rule of Civil Procedure 54(b), Kiwest moved to dismiss Mayo's appeal on the ground that Mayo did not appeal from a final order, but only two interlocutory orders and that Mayo's notice of appeal did not meet the jurisdictional requirements of Federal Rule of Appellate Procedure 3(a) and 4(a). We denied this motion by order dated January 5, 1996.

In McWilliams, the Fairfax County Equipment Management Transportation Agency employed Mark McWilliams (McWilliams) as an automotive mechanic. Id. at 1193. After approximately two years had passed since his hiring, McWilliams' co-workers, collectively known as the "lube boys," tormented McWilliams with a variety of offensive verbal and physical conduct of a sexual nature. Id.

Much of the conduct that McWilliams suffered at the hands of the lube boys was akin to and at least as deplorable as that suffered by Mayo. The verbal harassment that McWilliams suffered included the lube boys teasing him by asking about his sexual activities and taunting him with remarks such as, "`The only woman you could get is one who is deaf, dumb, and blind.'" Id. On one occasion a lube boy flicked his tongue at McWilliams and said "`I love you, I love you.'" Id. On one occasion, a lube boy offered McWilliams money for sex. Id. The physical harassment included one lube boy placing a broom stick to McWilliams' anus while another exposed his genitals to McWilliams and one lube boy entering a bus on which McWilliams was working and fondling him. Id. On at least three occasions, some of the lube boys tied McWilliams' hands together, blindfolded him, and forced him to his knees. On one of these occasions, one of the lube boys placed his finger in McWilliams' mouth to simulate oral sex. Id. On yet another occasion, a lube boy who sometimes took on supervisory responsibility placed a condom in McWilliams' food. Id.

Subsequently, McWilliams sued Fairfax County under Title VII for sexual harassment that created a hostile working environment. Id. at 1194. Following discovery, Fairfax County moved for summary judgment. The district court granted the motion on the ground that neither Fairfax County nor any of the supervisors had actual or constructive knowledge of the lube boys' conduct on which the sexual harassment claim was based. Id. Contending the district court erred in dismissing his Title VII claim of sexual harassment against Fairfax County, McWilliams appealed. Id.

On appeal, we noted that Fairfax County raised a serious question as to whether McWilliams had proffered sufficient admissible evidence to support the necessary finding that any of his supervisors, hence Fairfax County, were on actual or constructive notice of co-worker misconduct sufficient to have created a hostile work place

6

environment. Nevertheless, we did not address that question. Instead, we held that McWilliams' hostile environment claim failed for the "more fundamental reason that such a claim does not lie where both the alleged harassers and the victim are heterosexuals of the same sex." Id. at 1195. Critically, we noted that both McWilliams and all of his alleged harassers were indisputably males, and McWilliams made no claim that any was homosexual.[2] Id.

Here, Mayo's claim that Flanagan sexually harassed him suffers from the same fatal infirmity. Both Mayo and Flanagan were indisputably males, and Mayo makes no claim that either he or Flanagan was homosexual or bisexual. Specifically, paragraph thirty-three of Mayo's complaint states that Mayo is not homosexual and page seven of his brief to this court confirms that he is not alleging that Flanagan is homosexual. See Mayo's Br. at 7 ("Mayo makes no allegation as to whether Flanagan is homosexual.").

Mayo's attempt to distinguish McWilliams on its facts is unavailing. The verbal and physical conduct of the lube boys in McWilliams is squarely on par with that of Flanagan. With respect to verbal conduct, in both cases, the harassers teased the victim about topics of a sexual nature and made verbal comments inviting the victim to participate in sex. With respect to physical conduct, in both cases, the harassers poked the victim's anal area with a long wooden pole and fondled the victim.

In sum, under the authority of McWilliams, we affirm the district court's Rule 12(b)(6) dismissal of Mayo's sexual harassment claim because both Mayo and Flanagan were indisputably males and Mayo makes no claim that either was homosexual or bisexual.[3]

_____

[2] While we left open the question of whether a claim of same-sex sexual harassment is actionable under Title VII, we explicitly stated in dicta that were Title VII to be interpreted to protect against same-sex sexual harassment, "the fact of homosexuality (to include bisexuality) should be considered an element of the claim to be alleged and proved." Id. at 1195 n.5.

[3] We also affirm the district court's dismissal of Mayo's discriminatory discharge claim because "it appears that [Mayo] would not be entitled to relief under any facts which could be proved in support of [his] claim." See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 503 U.S. 936 (1992).

7

III.

Mayo also challenges the dismissal of his retaliation claim. Mayo's complaint alleged that Kiwest retaliated against him for complaining about Flanagan's offensive behavior to Kiwest's upper management by (1) firing him, (2) challenging his right to receive unemployment benefits, and (3) evicting him from his apartment. According to Mayo, the district court erroneously dismissed his retaliation claim because it incorrectly determined that he did not have a reasonable belief that he was being discriminated against in violation of Title VII. We disagree, and, therefore, affirm the district court's dismissal of this claim.

Title VII prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an employment practice made unlawful under Title VII. See 42 U.S.C. § 2000e-3(a). An employee need not have instituted formal proceedings under Title VII in order subsequently to invoke the protection of Title VII's retaliation provision; informal complaints to the employer will suffice. See Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Neither does the employee's underlying discrimination claim have to be meritorious in order to invoke the protection of Title VII's retaliation provision. See Ross v. Communications Satellite Corp., 759 F.2d 355, 357 n.1 (4th Cir. 1985). An employee does, however, need to have an objectively reasonable belief that he was the victim of discrimination made unlawful under Title VII. See, e.g., Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149, 1156-57 (9th Cir. 1982); Sisco v. J.S. Alberici Constr. Co., 655 F.2d 146, 150 (8th Cir. 1981), cert. denied, 455 U.S. 976 (1982); Kralowec v. Prince George's County, 503 F. Supp. 985, 1008 (D.Md. 1980), aff'd, 679 F.2d 883 (4th Cir.), cert. denied, 459 U.S. 872 (1982). The most obvious measure of the objective reasonableness of a plaintiff's belief that the conduct of which he complained violated Title VII is the state of the case law at the time the plaintiff engaged in the protected activity.

The state of the case law at the time that Mayo complained about Flanagan's offensive conduct to Kiwest's upper management reveals that Mayo's belief was objectively unreasonable. At that time (January 1995 to March 1995), no court had held a hostile-environment

8

claim actionable where both the alleged harasser and the alleged victim were of the same sex, no claim was made that either the alleged harasser or the alleged victim was homosexual or bisexual, and no claim was made that the alleged harasser treated men in the workplace differently than women. The lack of conflicting authority supports a finding that Mayo was not reasonable in believing that his claim was actionable.

In support of his position that his belief was reasonable, Mayo relies on two pronouncements by the EEOC, the administrative agency charged by Congress with enforcing Title VII. See 42 U.S.C. § 2000e-4. First, Mayo relies on a provision in the EEOC's compliance manual providing that "[t]he victim does not have to be of the opposite sex from the harasser" in order to state a viable claim of sexual harassment. EEOC Compl. Man. (CHH) § 615.2(b)(3). Second, Mayo relies on an EEOC administrative decision holding that an allegation that a male supervisor "made unwanted sexual advances" toward a male subordinate states "a violation of Title VII" if substantiated. EEOC Decision No. 81-16, Employ. Prac. Dec. (CHH) (1981) ¶ 6756 at 4796-97. Mayo stresses that because courts must give some deference to the EEOC's interpretative guidelines and adjudications, see Ritter v. Cecil City Office of Hous. & Community Dev., 33 F.3d 323, 328 (4th Cir. 1994), then his reliance upon these two pronouncements by the EEOC made his belief reasonable. We disagree.

The deference that Mayo stresses should be given to the EEOC's interpretive guidelines and adjudications "applies only to the extent the agency's rules are not contrary to the statute .. . , and that question is one of law for the courts to determine de novo." Id. In other words, we give no deference to an agency interpretation that is at odds with the statute. See Pub. Employees Retirement Sys. v. Betts, 492 U.S. 158, 171 (1989).

To the extent these two EEOC pronouncements can be read to interpret Title VII as providing a cause of action for the victim of the kind of heterosexual-male-on-heterosexual-male conduct alleged by Mayo, we conclude such an interpretation is irrational because it is completely at odds with the plain language of Title VII. The critical causation language of Title VII plainly provides actionability only if the harasser took the complained of actions "because of such individ-

9

ual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Common sense dictates that if the victim was harassed for any other reason, for example, because of the harasser's meanness of spirit, or because the victim refused to comply with a company policy, the conduct is not actionable. Indeed, in McWilliams we recognized the irrational nature of a contrary interpretation: "As a purely semantic matter, we do not believe that in common understanding the kind of shameful heterosexual-male-on-heterosexual-male conduct alleged here (nor comparable female-on-female conduct) is considered to be "because of the [target's] `sex'." McWilliams , 72 F.2d at 1195-96. Owing no deference to the EEOC's irrational interpretation of Title VII's critical causation language, we reject Mayo's reliance on such an interpretation as unreasonable.

In sum, we hold that the district court properly dismissed Mayo's retaliation claim because Mayo's belief that Flanagan's offensive conduct toward him violated Title VII was unreasonable.

IV.

In conclusion, we hold that the district court properly dismissed Mayo's sexual harassment claim, discriminatory discharge claim, and retaliation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, we affirm.**4**

AFFIRMED

_____
**4** We also affirm the district court's dismissal without prejudice of his state law claims.

10