**George David BOLT, Plaintiff,**

v.

**NORFOLK SOUTHERN CORP., and Kenneth E. Williams, Defendants.**

No. 2:97CV805.

United States District Court, E.D. Virginia, Norfolk Division.

July 31, 1997.

Hunter W. Sims, Jr., Richard M. Feathers, Kaufman & Canoles, P.C., Norfolk, VA, for Kenneth E. Williams.

Samuel J. Webster, Heather A. Mullen, David N. Payne, Williams, Kelly & Greer, P.C., Norfolk, VA, for Norfolk Southern Corporation.

Rex V. Sparks, Norfolk, VA, for Plaintiff.

### *OPINION AND ORDER*

MORGAN, District Judge.

### *Procedural History*

Plaintiff George David Bolt ("Bolt") filed a complaint on August 8, 1996. He then filed an Amended Complaint on September 4, 1996. Originally, Bolt's Amended Complaint contained five counts. Each count was asserted against both Norfolk Southern Corporation ("Norfolk Southern") and Kenneth E. Williams ("Williams"). Count 1 alleges quid pro quo sexual harassment in violation of Title VII. Count 2 alleges hostile environment sexual harassment in violation of Title VII. Count 3 alleges a state common law assault and battery claim. Count 4 alleges a state common law intentional infliction of emotional distress claim. Count 5 alleges retaliation in violation of Title VII.

Ruling on a motion to dismiss filed by Williams alone, this Court dismissed the Title VII counts, as against Williams, on January 17, 1997 because Williams was not named in Bolt's EEOC complaint and had no notice of the charges. The motion to dismiss the emotional distress claim was denied under the 12(b)(6) standard. Thus, all five claims remain against Norfolk Southern and the two state law claims remain against Williams. Williams is moving for summary judgment on both state law claims and for severance of the action if they remain. Norfolk Southern is moving for summary judgment on all five counts.[1]

### *Facts* [2]

Plaintiff Bolt became a Norfolk and Western Railway Company apprentice carman in 1968. After training for about two years, he became a line tender helper at Lambert's Point Coal Piers ("Coal Piers"). After further training, Bolt became an electrician at the Coal Piers in 1974. Defendant Williams worked as an Electrical Foreman at the Coal Piers from 1981 until May 17, 1994 when he was terminated. Bolt alleges that Williams harassed him in both sexual and nonsexual manners.

Bolt alleges that Williams made sexual advances by patting his buttocks two to three times per month. He specifically recalls three incidents: a mid–1980's incident in the electric room of a ship loader; a 1988 inci-

---

1. While Norfolk Southern's motion is entitled a Motion for Summary Judgment, its brief purports to be "in support of motions to dismiss and for summary judgment." The brief does not, however, designate individual arguments as being motions to dismiss or for summary judgment. Moreover, attachments were not designated as only pertaining to certain arguments. Accordingly, all arguments are discussed under a summary judgment standard.

2. Bolt's brief in opposition to the defendants' motions for summary judgment did not contain a list of disputed material facts as required by Local Rule 56(b) of the Local Rules of the United States District Court for the Eastern District of Virginia. Additionally, Plaintiff's brief only contained one cite to the record, which actually referred to a transcript filed in a previous case filed against the Defendants. For the purposes of this motion, the Court may assume that facts identified by the Defendants in their listings of material facts are admitted, unless such facts were controverted in Plaintiff's statement of genuine issues. *Id.*

dent in the shop area; and an April 29, 1994 incident in Williams' office. At two of these incidents, Williams also told him he had a "nice butt". Bolt also claims that Williams occasionally grabbed his buttocks, the last occurrence of which happened two or three weeks prior to April 29, 1994. Third, Williams attempted to hug him on four or five occasions between 1982 and 1994, the last such hug occurring one or two years prior to April 29, 1994. The hugs also involved verbal comments Bolt thought were sexually suggestive and later described Williams as talking "cutesy". Two times in 1992 and 1993, Williams pulled Bolt onto his lap and "performed simulated homosexual acts on him". In 1988, Williams touched his inner thigh as Williams, Bolt and another employee were getting into the cab of a truck. On several occasions, often following arguments between the two over work assignments and performance, Williams would tell Bolt that he liked him in a sexually suggestive manner. Williams apparently would raise his eyebrows up and down and use a high pitched voice. Finally, in the mid–1980's Williams invited Bolt to spend the night on his sail boat with him.

Incidents involving non-sexual harassment by Williams include: shaking Bolt by the shoulders on March 4, 1985 when Williams apparently thought he was asleep; pulling a pipe out of Bolt's mouth when Bolt did not react quickly to an order; taking food and drinks from Bolt; telling Bolt he was too short to be an electrician; falsely accusing Bolt of being away from his job without permission (charges were dropped when William's supervisor looked into them); throwing a hard hat when seeing Bolt in a supervisor hard hat and telling Bolt that he'd never work as a supervisor as long as he was at the railroad; telling Bolt he could treat him anyway he wanted to and that he would "make his life hell"; telling Bolt to "watch his step" when angry about a job assignment; and writing him up for a seat belt violation. While not knowing the specifics of the conversation, Bolt also alleges that Williams spoke in an overly friendly manner to Bolt's wife which upset her.

Williams first filed a charge of EEOC discrimination on February 22, 1995 alleging sexual harassment based on the April 29, 1994 incident. No pay or promotion issues were discussed in the charge. On April 26, 1996, Bolt filed a second charge of discrimination with the EEOC, alleging retaliation by General Foreman Wayne Henley and Mechanical Foreman Jerry Clemmer for having previously filed his prior harassment charge. Henley yelled at him and accused him of using his position on a safety committee as a weapon against other employees, but did not mention the prior EEOC complaint. Henley never treated him that way prior to the complaint. Clemmer has also treated him differently. Bolt specifically claims that Clemmer accused Bolt loudly over the radio system of not doing his assigned duties before checking to see why he was not there. Again, no explicit reference was made to the EEOC charge.

As an electrician, Bolt is an hourly wage, union contract employee whose pay and shift assignments are controlled by a collective bargaining agreement. No supervisor, including Williams, has the right to discipline or terminate Bolt without complying with the collective bargaining agreement. Bolt reported Williams' conduct in 1983 and 1987. The parties dispute whether he reported the harassment as sexual in nature. A written letter written in preparation for the 1987 meeting does not mention sexual harassment, but Bolt says he told the officials orally. Bolt did not complain within Norfolk Southern about any of the incidents after the 1987 meeting. That meeting apparently involved the master mechanic, union representatives, Bolt, and Williams. Bolt does not know what punishment, if any, Williams received in 1987, but perceived no difference in William's behavior and thus did not complain in the future.

Bolt was not physically injured by any of the conduct, but claims to have suffered emotional distress. He did not start seeing a therapist, Dr. Cohen, until May 1, 1996. He has seen her approximately six times, has not been hospitalized, and has not needed medication. At his deposition, Bolt testified that he has difficulty sleeping because he is anx-

ious about losing his job. He also testified that he has less interest in his sexual relationship with his wife, however he has not sought medical advice on this matter.

### Standard of Review

Among the purposes for summary judgment under Federal Rule of Civil Procedure 56 is "to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable" for the claims alleged in a plaintiff's complaint. *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. 1002, 1007 (D.Md.1993). An order for summary judgment is only appropriate when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts, through affidavits or other proof, which illustrate genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984); *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966) *aff'd*, 388 F.2d 987 (4th Cir.1967); *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968).

If a plaintiff fails to rebut a defendant's motion with such evidence in his behalf, a summary judgment will result when appropriate. "[T]he plain language of Rule 56(c) *mandates* the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 (emphasis added).

### Counts 1, 2 & 5—Title VII Claims Against Norfolk Southern

*Whether Bolt's Title VII Claims are Time Barred*

■ Norfolk Southern argues that any incidents occurring prior to August 26, 1994, 180 days prior to filing of Bolt's Title VII Charge of Discrimination on February 22, 1995 are time barred and not part of the Court's jurisdiction. Since the last harassment incident occurred on April 29, 1995, Bolt's Title VII claims must be dismissed. Norfolk Southern bases this reasoning on an argument that Virginia is not a "deferral" state under 42 U.S.C. § 2000e–5(e)(1) and, therefore, the 300–day filing period is inapplicable. Norfolk Southern acknowledges that the EEOC has declared Virginia to be a "deferral" state on the ground that the Virginia Human Rights Council is a "deferral" agency. However, Norfolk Southern argues that the EEOC's designation is invalid under the statutory requirements because the Virginia Council on Human Rights is "essentially powerless" because it is only authorized to seek voluntary conciliation and may not grant or seek relief or institute criminal proceedings.

Norfolk Southern's primary authority is a case out of the Western District of Virginia, *Dorsey v. Duff's Motel, Inc.*, 878 F.Supp. 869 (W.D.Va.1995). The *Dorsey* case, however, interprets similar language in a different section of Title VII that relates to public accommodations and does not discuss the EEOC's designation. Further, this Court has previously held that the Virginia Council on Human Rights is a deferral agency such that

the 300–day period proscribed in 42 U.S.C. § 2000e–5(e)(1) applies. *Holland v. First Virginia Banks, Inc.,* 744 F.Supp. 722 (E.D.Va.1990).[3] Accordingly, the Court DENIES Norfolk Southern's Motion for Summary Judgment based on this issue.

### The Continuing Violation Doctrine

■ The next issue becomes whether any acts that occurred prior to the April 28, 1994 incident can form a basis for Bolt's Title VII harassment claims (Counts 1 & 2) under the continuing violation doctrine. Norfolk Southern argues that Bolt knew or should have known that he was a victim of sexual harassment at the first moment any such conduct was directed at him. Norfolk Southern points out that: Bolt testified at his deposition that he felt sexually harassed from the first time the conduct occurred in the early 1980's; Bolt saw the EEO posters at Norfolk Southern which were posted over seven years ago; Bolt testified that he probably read the poster when it was first posted; Bolt alleged and testified that he suffered emotional injury as a result of Williams' conduct since the early 1980's; and there is no evidence that Bolt ever made "reasonable or diligent inquiry" into the merits of any claim. Thus, Norfolk Southern argues that plaintiff cannot meet the third factor in the *Berry* test, adopted by this Court *in Williams v. Enterprise Leasing Co. of Norfolk/Richmond,* 911 F.Supp. 988, 996 (E.D.Va.1995) (discussing *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971 (5th Cir.1983)).

Plaintiff responds that the third factor is met because Bolt did not realize that he had an avenue to address the sexual harassment by Williams until after he attended a Sexual Harassment Training Workshop on December 19, 1994. After the workshop, he promptly filed a charge on February 25, 1995.[4]

■ Under the *Berry* test, a court considering the applicability of the continuing violation doctrine should analyze three factors: "(1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are frequent; and (3) whether the alleged acts have a degree of permanence which would trigger an employee's awareness and duty to assert his or her rights." *Williams,* 911 F.Supp. at 996. The third factor, "essentially a requirement that the repeated acts would not have put a reasonable employee on notice of the alleged discriminatory animus, evokes considerations central to statutes of limitations generally." *Id.* (internal quotations omitted). Considered the most important by the *Williams* Court, this third factor limits the applicability of the continuing violation doctrine such that "both ... the defendant's interest in being protected against stale claims and ... the plaintiff's interest in adopting strategies designed to deal both with employment discrimination and of being certain that matters have reached a point affording a proper basis for resort to the courts" are considered. *Id.* While it may be unreasonable to require a plaintiff to sue on each act of discrimination, once the plaintiff has or reasonably should have discerned that he was a victim of discrimination because of the pattern created by a series of adverse actions, the limitations period should begin to run. *Id.* The *Williams* Court held that "where a plaintiff

---

**3.** Under 42 U.S.C. § 2000e–5(c)(1), the 300–day period only applies when "the person aggrieved has initially instituted proceedings with a State or local agency." It is not clear from the record whether or not the February 1995 Charge *actually was* filed with the Virginia Council. Case law suggests that whether it was "initially instituted" depends on whether the complaint which was initially filed by Bolt with the EEOC was automatically or otherwise referred to the state or local authority. *See, e.g., Brown v. Crowe,* 963 F.2d 895 (6th Cir.1992); *Rouse v. Gulf Oil Corp.,* 350 F.Supp. 178 (E.D.Pa.1982). Plaintiff's counsel represented at hearing that he believed the EEOC automatically referred the Charge. As there is no other evidence in the record as to

how the EEOC and the Virginia Council on Human Rights interact, the Court must resolve this issue in favor of the nonmoving party for the purposes of this motion.

**4.** He also responds that Bolt alleged continuing harassment in his second Charge filed August 22, 1996. The 1996 Charge discussed harassment by supervisors other than Williams after Williams was discharged by Norfolk Southern. As there is no allegation or testimony that this later harassment was sexual, as opposed to in retaliation for filing a sexual harassment charge, this conduct cannot form a basis under the continuing violation doctrine for the sexual harassment claims.

claims that allegedly discriminatory events outside of the relevant Title VII statutory period are part of a "continuing violation", plaintiff must at the very least show that he or she failed to perceive the alleged discriminatory animus [behind the adverse acts] ... prior to the statutory period, and that such recognition would not reasonably occurred until a point in time within the statutory period." *Id.* at 997. The Plaintiff in *Williams* did not meet that standard because he had complained about discrimination more than 180 days before filing his charge. *Id.*

While Bolt did testify at his deposition that the Workshop spurred him to file the charge, under *Williams,* the continuing violation doctrine does not apply in this case. The issue is not whether plaintiff thought he had a meritorious claim, *Williams* concentrates on when he knew he was being sexually harassed. Bolt testified that he knew from the beginning that he was being sexually harassed. Further, Bolt contends that he orally told Williams' supervisors about the harassment in the 1987 meeting. This is not a case where the "discriminatory animus" is hidden and the plaintiff must figure out its existence based on a series of adverse employment actions. Thus, the Court **GRANTS** Norfolk Southern's motion for summary judgment on Counts 1 & 2 with respect to alleged acts of sexual harassment by Williams that occurred prior to April 28, 1994.

*Count 1—Exhaustion of Administrative Remedies for the Quid Pro Quo Harassment Claim*

■ Norfolk Southern argues that Bolt failed to exhaust his administrative remedies for Count 1, the quid pro quo sexual harassment claim because he made no promotion or pay allegations in the charges of discrimination and such allegations are not reasonably related to any of the allegations contained in his charge. Bolt argues that a claim of denial of promotions and pay increases could reasonably be expected to grow out of a charge of sexual harassment filed with the EEOC.

■ This Court has previously held that the factual statement contained within the EEOC charge is "the crucial element" of the charge. *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752 (E.D.Va.1991). Generally, a plaintiff may not pursue claims in a Title VII lawsuit that were not included in the EEOC charge because that would serve to circumvent the EEOC's investigatory and conciliatory role and deprive the defendant with notice in a manner similar to a failure to file a timely EEOC charge. *Doyle v. Sentry Ins.,* 877 F.Supp. 1002, 1007 (E.D.Va.1995). Thus, an omitted claim may only be pursued in a Title VII action if it is reasonably related to the allegations and claims in the charge. *Id.; Nicol,* 767 F.Supp. at 752–53. This approach is widely followed and a failure to exhaust has been found preclude omitted claims in situations virtually identical to this case. *Nicol,* 767 F.Supp. at 753 & n. 12 (listing cases). Accordingly, this Court has held that a claim of discriminatory discharge would not be reasonably related to an EEOC charge which claimed only discriminatory promotion, even when both arise out of the same discriminatory animus against women. *Doyle,* 877 F.Supp. at 1007–08. In *Nicol,* a charge including only allegations of discriminatory discharge based on sex and pregnancy could not support a claim for sexual harassment or hostile environment claims. 767 F.Supp. at 752–53.

Bolt's EEOC charge and accompanying factual statement never mention any pay or promotion issues. Additionally, on the merits, Williams and Williams' supervisors had no ability to affect Bolt's pay as it was governed by the collective bargaining.[5] Further, Bolt testified that Williams neither expressly nor impliedly conditioned receipt of a promotion or pay increase in return for sexual favors during the April 1994 incident. Accordingly, the Court finds that Bolt has failed to exhaust administrative remedies as to the claims of quid pro quo sexual harassment contained in Count 1.

**5.** The parties dispute whether Williams had any control, by way of initial recommendation, over

promotions at the Coal Piers.

**518**

*Counts 1 & 2—Whether Same–Gender Sexual Harassment States a Claim under Title VII*

■ Norfolk Southern argues that Bolt's same-gender sexual harassment counts do not state a Title VII cause of action in the Fourth Circuit under *McWilliams, Hopkins,* and *Wrightson. McWilliams v. Fairfax County Board of Supervisors,* 72 F.3d 1191 (4th Cir.1996); *Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745 (4th Cir.1996); *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138 (4th Cir.1996). Bolt responds that he has stated a claim under *Tietgen v. Brown's Westminster Motors, Inc.,* 921 F.Supp. 1495 (E.D.Va.1996). Norfolk Southern replies Bolt has produced no facts that would support an inference that Williams is homosexual or bisexual.

In *McWilliams,* the Fourth Circuit affirmed a grant of summary judgment on a same-gender hostile environment sexual harassment claim. 72 F.3d at 1193, 1195. The *McWilliams* Court held that "such a claim does not lie where both the alleged harassers and the victim are heterosexuals of the same sex." *Id.* at 1195. The *McWilliams* Court carefully limited its holding to hostile environment claims where the harassers and victim are heterosexuals of the same sex, and did not rule out claims based on adverse employment decisions or claims where one or more of the parties were homosexual or bisexual. *Id.* at n. 4. In a footnote, the *McWilliams* Court noted that there was no "allegation or proffered proof" that the harassers were "in fact homosexual" and went on to discuss the dissent's belief that homosexuality-in-fact could be proven outright or inferred by the nature of the harassing conduct. *Id.* at n. 5. The *McWilliams* Court then said in dicta, "With respect, we believe that were Title VII to be so interpreted, the fact of homosexuality (to include bisexuality) should be considered an essential element of the claim to be alleged and proved." *Id.*

In *Hopkins,* the Fourth Circuit affirmed the district court's grant of summary judgment in a same-gender hostile environment case holding that "[r]egardless of whether [ ] same-gender sexual harassment is actionable

under Title VII, [the plaintiff] still bears the burden of demonstrating ... that [the] alleged harassment was sufficiently severe or pervasive to create an objectively hostile or abusive work environment and the harassment was directed at him because of his sex." 77 F.3d at 753–54. After reviewing the record, the Court held as a matter of law that the conduct was "neither sufficiently severe nor sufficiently pervasive to create and environment that a reasonable man would find hostile and abusive". *Id.* at 754. Therefore, the majority did not reach the question of whether the conduct was directed at the plaintiff because of his sex. *Id.* at 754–55.

Finally, in *Wrightson,* the Court of Appeals for the Fourth Circuit reversed a district court's dismissal of a same-gender hostile work environment claim where the victim was allegedly heterosexual and the harassers were alleged to be openly homosexual. 99 F.3d at 139. The *Wrightson* Court held that a claim for same-sex hostile work environment harassment may lie where the perpetrator of the harassment is homosexual. *Id.* at 144.

*Tietgen,* decided after *McWilliams* and *Hopkins,* but prior to *Wrightson* found that certain conduct, "earnest sexual solicitation", if alleged in the complaint, does state a claim sufficient to withstand a motion to dismiss. 921 F.Supp. at 1497, 1502. Specifically, the sexual remarks in question included solicitation for sexual acts. *Id.* at 1502. The *Tietgen* Court found it apparent that the solicitations were in earnest because when the advances were rejected, the alleged harasser "began a campaign of ridicule, intimidation, embarrassment, and harassment at work". *Id.* at 1502. Since the solicitations were in earnest, and not simply "locker room antics, joking, or horseplay", the allegations "invite, if not compel, the conclusion that [the] harasser was homosexual or bisexual." *Id.* at 1501–02.

In this case, Bolt has not alleged that Williams is homosexual or bisexual. Additionally, the record provides no basis for an inference that Williams was homosexual other than his harassing conduct. Williams was married during most of the time in question. Bolt saw Williams out with a woman socially.

Bolt never saw Williams on a date with a man. And, in a sworn affidavit, Williams denies that he is a homosexual and avers that he has never held any sexual attraction for Bolt. Bolt said he did not know if Williams was homosexual, or how to tell if someone was homosexual, and admitted that he did not know whether Williams subjectively intended to joke, engage in horseplay or was serious. The only evidence other than the harassing conduct itself is a sworn affidavit by co-worker who avers that he was told by co-workers shortly after joining Norfolk Southern that Williams was homosexual, despite the fact he was married. This statement, however, would be inadmissible at trial to prove Williams actually is homosexual. Further the Court has not found, or been directed to any evidence in the record regarding any explicit requests for sexual favors from Bolt, such as those relied upon in *Tietgen.* While the United States Court of Appeals for the Fourth Circuit has not explicitly ruled on the application of the *McWilliams, Hopkins,* and *Wrightson* decisions to quid pro quo claims, the Court sees no principled distinction in this case and believes they, as has the United States Court of Appeals for the Fifth Circuit would require similar allegations and proof in such claims. *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118, 119–20.

For all the above reasons, the Court **GRANTS** Norfolk Southern's motion for summary judgment as to Counts 1 & 2.

*Count 5—Whether Prima Facie Case of Retaliation has been Established*

■ Norfolk Southern argues that Bolt cannot establish a prima facie Title VII retaliation case. Norfolk Southern argues that Bolt could not have had an objectively reasonable belief that he was the victim of discrimination that is actionable under Title VII and thus did not participate in protected activity. Further, Norfolk Southern argues that Bolt cannot show that any adverse action occurred. Finally, Norfolk Southern argues that Bolt cannot show any causal connection between the filing of his EEOC charges and the incidents he alleges.

Bolt responds that the supervisors in question, Wayne Henley and Jerry Clemmer were attempting to discredit and humiliate Bolt. Both openly belittled him publicly—Henley in person, Clemmer on the radio. Further, they had a good reason for trying to discredit Bolt and Bolt had a reasonable objective belief in his original claim since the EEOC later investigated Bolt's claim, found "probable cause", and proposed a conciliation agreement.

A claim of retaliation in the employment context triggers the three-step analysis set forth by the Supreme Court in *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). The first step under the three-step analysis requires the plaintiff-employee to prove by a preponderance of the evidence a prima facie case of retaliation. *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff is able to meet this burden, the defendant-employer has the opportunity to present a legitimate, non-discriminatory reason for its employment action. *Id.* If the employer meets this burden of production, the presumption of unlawful discrimination created by the prima facie case is extinguished, and the burden shifts back to the employee to show that the reason(s) provided by the employer were not its true reasons, but were a mere pretext for the discrimination. *Id.* The plaintiff-employee always bears the ultimate burden of proving that the employer intentionally discriminated against him. *Id.; Jones v. Flagship Int'l.,* 793 F.2d 714, 718 (5th Cir.1986). Plaintiff in this case fails to establish a prima facie case of retaliation, therefore the Court need not address the second and third steps of the *McDonnell–Burdine* analysis.

An employee may maintain an action for retaliation if the prima facie case has been established by a preponderance of the evidence. Such a prima facie case consists of three elements: 1) that the employee was engaged in a statutorily protected activity; 2) that the employer took an adverse employment action against the employee; and 3)

that there was a causal connection between the statutorily protected activity and the adverse employment action. *See, e.g., Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985); *Equal Employment Opportunity Comm'n v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1012 (9th Cir.1983). Only after the plaintiff has established all three elements will the burden then shift to the defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action.

In this case, there is no evidence that Clemmer and Henley's actions affected the terms or conditions of Bolt's employment. Bolt was not formally disciplined on either of the incidents he alleges and there is no evidence of any further repercussions. There is no evidence that he was denied any specific promotions after filing his complaint. His wages and shift assignment, governed by the collective bargaining agreement, have not changed. Moreover, Bolt testified that the only reason he believed these incidents were connected with his EEOC complaint was that he was treated more formally, i.e., called "Mr. Bolt" instead of "George", after filing the charge and because neither supervisor had ever yelled at him before. Additionally, while not binding, the Court finds persuasive the reasoning of *Mayo v. Kiwest Corp.,* 94 F.3d 641, 1996 WL 460769 (4th Cir. August 15, 1996) (unpublished) (per curiam) (upholding the dismissal of a retaliation claim based on same-sex sexual harassment where there no allegation that the harasser was homosexual). As Bolt has not established a prima facie case of retaliation, the Court **GRANTS** summary judgment on Bolt's retaliation claim, Count 5.

### State Law Claims

As the Court is granting summary judgment on Counts 1, 2, and 5, only Counts 3 and 4 remain. These are state law claims of intentional infliction of emotional distress and battery. At the hearing of this matter, the Court was informed that these counts are alleged in a pending state suit, filed before this action, against both Norfolk Southern

**6.** The state suit was mentioned in the briefs in regards to an issue about the statute of limita-

and Williams.[6] In the absence of any remaining federal claims and in deference to this state proceeding, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counts 3 and 4. Accordingly, the Court **DISMISSES** the state law claims of intentional infliction of emotional distress and assault and battery, Counts 3 and 4, without prejudice.

In summary, the Court **GRANTS** Norfolk Southern's Motion for Summary Judgment as to Counts 1, 2, and 5, the Title VII claims, with prejudice, and **DISMISSES** Counts 3 and 4, the state law claims, without prejudice. Accordingly, Norfolk Southern's Motion for Summary Judgment as to Counts 3 and 4, Williams' Motion for Summary Judgment as to Counts 3 and 4, and Williams' Motion to Sever are **MOOT**.

The Clerk is **REQUESTED** to send copies of this order to all counsel of record.

It is so **ORDERED**.

### ORDER

On this day came the parties, by counsel, on the motion of the defendants for an extension of the time within which they have to disclose the information specified in Rule 26(a)(2)(A) and (B), Fed.R.Civ.P. not later than June 6, 1997.

UPON CONSIDERATION WHEREOF, for good cause shown, it is

ADJUDGED, ORDERED AND DE-CREED that defendants shall disclose the information specified in Rule 26(a)(2)(A) and (B), Fed.R.Civ.P., not later than June 6, 1997 with respect to their expert witnesses, and if not previously disclosed, the plaintiff shall disclose contradictory or rebuttal evidence, specified in Rule 26(a)(2)(B), Fed.R.Civ.P., to defendants' disclosure, not later than June 13, 1997.

tions on these claims. The briefs did not, however, indicate that the suit was still pending.