**Grace J. HADEED and Joan E. Winter, Plaintiffs**

v.

**Thomas ABRAHAM and Glenda Abraham, Defendants.**

No. CIV.A. 2:02CV695.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 23, 2003.

John B. Mann, Esq., Levit Mann Halligan & Warren, Richmond, VA, for Plaintiffs.

Lawence Steven Emmert, Esq., Sykes Bourdon Ahern & Levy, PC, Virginia Beach, VA, for Defendants.

## OPINION AND ORDER

MORGAN, District Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court on the Defendants' Motion for Summary Judgment (document no. 8). Also pending is the Defendants' Motion to Compel (document no. 10) and the Plaintiffs' Motion for an Extension of Time to File Affidavits (document no. 17). The Court held a hearing on the three motions on January 30, 2003, ruling from the bench that the Mo-

tion for Summary Judgment would be TAKEN UNDER ADVISEMENT to allow the Plaintiffs to take the deposition of Deborah A. Baisden, that the Motion to Compel was MOOT [1], and that the Plaintiffs' Motion for an Extension of Time to File Affidavits would be GRANTED [2]. The Plaintiffs now having taken Ms. Baisden's deposition, and both parties having filed with the Court their designations from the Baisden deposition [3], the Court will GRANT the Defendant's Motion for Summary Judgment. This order more fully explains the Court's reasoning.

This case arises from the sale of a residential real estate parcel located in the Sandbridge area of Virginia Beach, Virginia. Plaintiffs Grace Hadeed and Joan Winter are women who wanted to purchase the parcel. The sellers, Defendants Thomas and Glenda Abraham, are a married couple who owned the property. The Defendants ultimately chose to sell the property to someone other than the Plaintiffs.

Deborah Baisden is the principal realtor in the transaction. She had many roles in the transaction, acting (for a time) as the seller's agent for the Defendants, the buyer's agent for Plaintiffs, and the buyer's agent for the individuals who ultimately purchased the Defendant's residence. Subsequent to the transaction involving the Defendants' property, Baisden was the listing agent for the sale of the Pfanstiels' property at Sandbridge and she also rented her own Sandbridge property to the Defendants. Thus, it can be seen that Baisden was involved in this transaction at many levels. Baisden, however, is not a party to this litigation.

Plaintiffs allege that the Defendants conducted the sale in a manner contrary to the Federal Fair Housing Act, 42 U.S.C. §§ 3601–31, and the Virginia Fair Housing Act, VA. CODE ANN. § 36–96.3. Specifically, Plaintiffs allege the Defendants refused to sell the property to them because of their gender and, in so doing, the Defendants engaged in prohibited sex discrimination.

The summary judgment record is now complete. The Defendants filed their Brief in Support of Motion for Summary Judgment on December 20, 2002 (document no. 9). The Plaintiffs' Opposition Brief was filed on January 10, 2003 (document no. 15). The Affidavits were filed in open Court on January 30, 2003 (document nos. 27–34). The Defendants' Rebuttal Brief was filed on January 16, 2003 (document no. 23). The matter was argued on January 30, 2003. The Plaintiffs' submit-

1. The Defendant served discovery on November 12, 2002. Plaintiff had not responded to the Defendant's discovery as of December 30, 2002, the date on which the Defendants' Motion to Compel (document no. 10) was filed. Defendants' Counsel at the hearing acknowledged that the discovery responses, though untimely, were received from Plaintiffs' Counsel on January 10, 2003.

2. The Plaintiffs sought and were granted leave of Court to extend the time for filing their response to the Defendants' Motion for Summary Judgment (*see,* Order entered on January 15, 2003 (document no. 22)). The Plaintiffs filed their opposition brief within the extended time that was allowed, but did not file any affidavits in support of the opposition brief. The affidavits were proffered several days later. At the hearing the Court admonished Plaintiffs' Counsel for the lateness of his various filings and then granted leave for the untimely filing of the affidavits.

3. The Court gave Plaintiffs leave to supplement the summary judgment record with Ms. Baisden's deposition so long as the Plaintiffs filed their designations therefrom with the Court not later than February 13, 2003. The Plaintiffs' filing of their designations from Ms. Baisden's deposition were untimely proffered, on February 14, 2003. The Court hereby GRANTS leave for the Plaintiffs' untimely filing of their designations from Ms. Baisden's deposition.

ted their designations from the Baisden deposition on February 14, 2003 (document no. 35).[4] The Defendants submitted their designations from the Baisden deposition on February 21, 2003 (document no. 36).

### Findings of Fact [5]

In accordance with Local Rule 56(B) [6], the Defendants, as the movants, submitted a list of undisputed facts at pages 1–3 of their opening brief (document no. 9). The Defendants' Opening Brief cited the parts of the record relied on to support the proffered facts, in compliance with Local Rule 56(B).

The Plaintiffs, at pages 2–4 of their Opposition Brief (document no. 15), sought to contest six of the Defendants' facts. By implication, the Plaintiffs did not contest the other facts proffered by the Defendants. By operation of Local Rule 56(B), all facts proffered by the Defendants which Plaintiffs did not contest are admitted for the purposes of the summary judgment motion. *See, Moore v. PYA Monarch,* 238 F.Supp.2d 724, 725 (E.D.Va. 2002); *Blaustein & Reich v. Buckles,* 220 F.Supp.2d 535, 539 (E.D.Va.2002); *Bon Supermarket & Deli v. United States,* 87 F.Supp.2d 593, 600 (E.D.Va.2000); *Withers v. Eveland,* 988 F.Supp. 942, 945 (E.D.Va.1997); *Bolt v. Norfolk Southern Corp.,* 22 F.Supp.2d 512, 513 n. 2 (E.D.Va. 1997). The six facts Plaintiffs seek to dispute are noted and analyzed in this Order.

The Plaintiffs also proffered at pages 5–20 of the Opposition Brief (document no. 15) numerous additional facts. Many of these additional facts were not supported by citation to evidence in the summary judgment record, in violation of Local Rule 56(B). The Plaintiffs' proffered facts that were unsupported by citation to evidence in the summary judgment record were rejected by the Court and will not be noted in this Order. Those facts proffered by the Plaintiffs that were supported by citation to evidence in the summary judgment record are noted and analyzed in this Order.

The Court infers that the Plaintiffs meant to proffer additional facts (in reliance on the Affidavits of Winter, Hadeed and Tolson) via their Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony (document no. 35). The additional facts Plaintiffs seek to establish pertain to the manner in which the Defendants characterized the Plaintiffs'

4. Although the Plaintiffs' filed the entire transcript from the Baisden deposition, the Plaintiffs' designation consists of pages 15 & 31–32. Plaintiffs' Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony, page 2 (document no. 35).

5. This opinion views the facts and the inferences flowing therefrom in the light most favorable to the Plaintiffs.

6. Local Rule 56(B) provides as follows:

Summary Judgment—Listing of Undisputed Facts: Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

U.S. District Court for t<CARET>he Eastern District of Virginia, Local Rules of Practice 56(B).

during the negotiations concerning the property. These additional facts are noted and analyzed in the Order.

In the spring of 2002, the Abrahams' home was publicly listed for sale, with an asking price of $525,000. Complaint, ¶ 12, and answer, ¶ 12.[7] On May 5, the Plaintiffs viewed the property. Complaint, ¶ 10. They did not submit a proposed contract at that time, or at any time within the following seven weeks. Complaint, ¶¶ 12, 14, 18, 20, 21. The Plaintiffs delayed evaluating the property and formulating their offer so that they could take care of various professional and personal obligations. Affidavit of Winter, ¶ 4 (document no. 28); Affidavit of Hadeed, ¶ 5 (document no 27); Exhibit 4, attached to Plaintiffs' Opposition Brief (document no. 15).[8] During the first viewing of the property on May 5th, the Defendants inquired into the position and whereabouts of Winter's husband, and whether Winter's husband would be a party to the transaction. Affidavit of Winter, ¶ 3 (document no. 28); Affidavit of Hadeed, ¶ 4 (document no. 27).[9]

Hadeed worked with Deborah Baisden (a real estate agent with ties to both the Plaintiff buyers and the Defendant sellers [10]) to arrange a subsequent viewing of the property. During one of these conversations, Baisden asked if Winter's husband would attend also. Affidavit of Hadeed, ¶ 8 (document no. 27).

7. This is the first of six disputes proffered by the Plaintiffs. In reliance on an affidavit from Plaintiff Winters (document no. 28), the Plaintiffs contend that the property had been listed, with price alterations, four times since 2001. *See,* Plaintiffs' opposition brief, at page 2 (document no. 15). Because the fourth listing/price adjustment was put into effect in April 2002, and the Plaintiffs first viewed the property on May 5, 2002, this proffer by the Plaintiffs is not material to the issues before the Court on summary judgment.

8. This is one of the additional facts proffered by Plaintiffs in their Opposition Brief.

9. This fact is suggested (by inference) in the Plaintiffs' Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony, page 1 (document no. 35).

10. This is the third of six disputes proffered by the Plaintiffs. The Defendants characterized Baisden as acting in a dual capacity during the transaction, meaning that she simultaneously represented both the Plaintiff buyers and the Defendant sellers. Defendants' Opening Brief at page 2 (document no. 9). The Plaintiffs dispute this characterization. The Plaintiffs proffer a "contract for exclusive right to represent client/buyer" that was executed on June 26, 2002 by the two Plaintiffs and also a "disclosure of dual representation/disclosure of designated representatives" document that was executed by the Defendants on that same date. Copies attached as exhibits 2 & 6 to Plaintiffs' Opposition Brief (document no. 15). Based on these documents, the Plaintiffs argue that Baisden was acting as a "designated agent" and not a "dual agent" under Virginia law. Plaintiffs' Opposition Brief at page 2 (document no. 15); *contra* Plaintiffs' Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony, page 2 (document no. 35) (Plaintiffs argue that Baisden represented the sellers "throughout the entire sales transaction"). Baisden was the listing agent for the Defendants' property, and thus she represented the Defendants at the outset of the process. It appears, however, that she prepared a disclosure of dual representation for the Plaintiffs, listing herself as the Plaintiffs' designated representative. When she met with the Defendants on June 26, 2002, Baisden showed them the disclosure and obtained their signature thereto. *See,* Va. Code Ann. § 54.1–2139. At that point, Baisden ceased representing the Defendants. Supplemental Affidavit of Thomas Abraham, ¶¶ 2–3 (copy attached as exhibit 2 to Defendants' Rebuttal Brief (document no. 23)). The Court accordingly **Finds** that going forward from June 26, 2002 Baisden was the Plaintiffs' designated agent and that she no longer represented the Defendants. A designated agent "means a licensee who has been assigned by a principal or supervising broker to represent a client when a different client is also represented by such principal or broker in the same transaction." *See,* Va. Code Ann. § 54.1–2130.

On June 16[11] and 24, Plaintiff Winter again viewed the property. Complaint, ¶¶ 17, 19. During the second viewing of the property on June 16th, Winter was accompanied by a male architectural designer. One of the Defendants inquired of him whether he was the husband of Winters.[12] Affidavit of Winter, ¶ 5 (document no. 28); Affidavit of Baisden, ¶¶ 6–7 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)). During the third viewing of the property on June 24th, Winter was accompanied by a male civil engineer. Baisden asked if the civil engineer was Winter's husband.[13] Affidavit of Tolson, ¶ 5 (document no. 29). Baisden also told Winter of the Defendants' concern that "the girls" might not have the financial wherewithal to purchase the property and that the Defendants were upset because "the girls" were bringing so many people to see the property. Affidavit of Tolson, ¶ 5 (document no. 29); Affidavit of Winter, ¶ 8 (document no. 28).[14]

After the third viewing (on June 24th), the Plaintiffs decided to submit an offer on the home. Complaint, ¶ 19.

On June 25 or 26, the Plaintiffs delivered to Baisden an offer to purchase the property at a price of $485,000, some $40,000 below the listing price. Complaint, ¶ 24; Answer, exhibit A; Affidavit of Deborah Baisden, ¶¶ 13 & 15 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)). At Baisden's suggestion, Winter drafted a note to the Defendants complimenting them on the condition of the property. The note was delivered to the Defendants along with the Plaintiffs' offer to purchase the property (on June 25 or 26).[15] Affidavit of Winters, ¶ 19; Exhibit 5 attached to Plaintiffs' Opposition Brief (document no. 15). The Plaintiffs had obtained loan approval in the amount of $485,000 at the time that they tendered their offer.[16] Exhibit 9 at-

11. This is the second of six disputes proffered by the Plaintiffs. The Defendants assert in their opening brief that the second viewing occurred on June 17, 2002. Defendants' Opening Brief at page 2 (document no. 9). In reliance on an affidavit from Plaintiff Winters (document no. 28), the Plaintiffs sought to dispute this fact by noting that the second viewing occurred on June 16, 2002, as opposed to June 17, 2002. Plaintiffs' Opposition Brief, at page 2 (document no. 15). The Court must at this stage resolve such ambiguities in the light most favorable to the Plaintiffs, as they are the non-moving party. Accordingly, the Court Finds, for the purposes of this motion, that the second viewing occurred on June 16, 2002.

12. This is one of the additional facts proffered by Plaintiffs in their Opposition Brief.

13. This fact is suggested (by inference) in the Plaintiffs' Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony, page 1 (document no. 35).

14. These facts are suggested (by inference) in the Plaintiffs' Memorandum of Law Regarding the Admissibility of Deborah Baisden's Testimony, page 1 (document no. 35). There is contrary evidence in the record. Affidavit of Thomas Abraham, ¶ 4 (copy attached as exhibit 4 to Defendants' Opening Brief (document no. 9)) ("We had no reason to believe that either pair of buyers was not financially capable of performing the contract."); Supplemental Affidavit of Deborah Baisden, ¶ 3 (attached as exhibit 1 to Defendants' Rebuttal Brief (document no. 23)) ("I have never heard the Abrahams refer to Hadeed and Winter as 'girls.' When they referred to the plaintiffs collectively, they called them 'the doctors'."). The Court must at this stage resolve such ambiguities in the light most favorable to the Plaintiffs, as they are the non-moving party. Accordingly, the Court Finds, for the purposes of this motion, that the Defendants on June 24, 2002 referred to the Plaintiffs as "girls".

15. This is one of the additional facts proffered by Plaintiffs in their Opposition Brief.

16. This is one of the additional facts proffered by Plaintiffs in their Opposition Brief.

tached to Plaintiffs' Opposition Brief (document no. 15).

The Plaintiffs were not the only persons interested in the property. James and Priscilla Pfanstiel first viewed the home on June 22, and soon thereafter decided to bid on it. Affidavits of James and Patricia Pfanstiel, ¶¶ 2 and 3 (copies attached as exhibits 6 & 7 to Defendants' Opening Brief (document no. 9)). The Pfanstiels prepared their offer on June 26 and gave it to Baisden, asking her to deliver it to the Defendants. *Id.*, ¶ 4. That offer provided for a purchase price of $505,000, or $20,000 higher [17][18] than the Plaintiffs' offer. Affidavit of Baisden, ¶ 17 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)); Answer, exhibit B. Later on June 26, Baisden took both offers to the Defendants for their consideration. Affidavit of Baisden, ¶ 19 (copy attached as exhibit 1 to Defendants' Opening Brief

**17.** This is the fourth of six disputes proffered by the Plaintiffs. The Plaintiffs argue that the Pfanstiels' purchase price was never "$20,000 higher" than the Plaintiffs' initial offer. In reliance on the documents attached at exhibit 1 to the Opposition Brief (document no. 15), the Plaintiffs argue that their various offers would have netted an additional $9,700 to $46,290 for the Defendants beyond the amount Defendants obtained from the Pfanstiels. Exhibit 1 is three pages of mathematical computations and eight pages of argument. The author is not identified. The documents are not in the form of an affidavit setting forth facts, *see* Fed. R. Civ. P. 56(e), and they are not pleadings, answers to interrogatories, or admissions on file, *see* Fed. R. Civ. P. 56(c). Even with the latitude on admissibility accorded to a non-moving party in the summary judgment situation, *see Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (the non-moving party's evidence need not be in "a form that would be admissible at trial"), exhibit 1 should be stricken from the summary judgment record because the Plaintiffs have made no showing that the material contained therein can be reduced to admissible evidence at trial. Another basis for exclusion is that the exhibit is filled with argument, as opposed to facts. *See, Pfeil v. Rogers,* 757 F.2d 850, 862–63 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986) (courts deciding summary judgment should disregard legal argument in affidavits). As such, it appears that the exhibit is an impermissible attempt by Counsel to circumvent the page limitation for briefs filed with the Court. *See,* Local Rule 7(E)(3) (briefs shall not exceed 30 pages). Having prepared a brief that utilized the full 30 pages allowed by Local Rule, the Plaintiffs' counsel appears to have used the exhibit as a mechanism to insert an additional 8–11 pages of argument into the record.

**18.** The thread running through the Plaintiffs' arguments concerning the comparative value of the Plaintiffs' offer *vis-a-vis* the offer submitted by the Pfanstiels is the Plaintiffs' mistaken contention that their offer required them, as opposed to the Defendants, to pay the real estate commission for Baisden's services (of approximately $15,000) while the Pfanstiels' offer did not. However, ¶ 15 of the Plaintiffs' offer placed the obligation to pay Baisden's commission on the Defendants ("Seller agrees to pay a brokerage fee at settlement"). *See,* exhibit 2 to Defendants' Opening Brief (document no. 9). The Plaintiffs' mistaken assertion regarding the commission is evidently based on their agreement with Prudential Decker Realty, which is documented in a form entitled "Contract for Exclusive Right to Represent Client/Buyer". Copy attached as exhibit 2 to Plaintiffs' Opposition Brief (document no. 15). The key provision is in ¶ 3, entitled "Compensation", which reads in pertinent part:

> Most properties listed by the various real estate companies provide for the seller to pay a commission in the case of Seller Agency, Dual Agency or Buyer Agency. In the event a specific property precludes payment of a commission to a Buyer Brokerage Agency relationship, Buyer(s) ... agree to pay commission to Prudential Decker Realty in the amount of 3%.

The offer submitted by the Plaintiffs contains no restriction on the payment of a commission by the sellers. Indeed, that offer specifically provides that the sellers will pay the broker's fee. For this reason, the Plaintiffs' contingent obligation to fund Baisden's fee remained inchoate.

(document no. 9)). In addition to noting the price differential between the two offers, the Defendants also noted two nonmonetary differences in the two offers. First, the Plaintiffs' offer required the Defendants to give the Plaintiffs 30 days to complete the home inspection; the Pfanstiels' offer proposed a ten day time limit. Second, the Plaintiffs' offer required the Defendants to afford the Plaintiffs "reasonable access" to the premises after the completion of the home inspection; the Pfanstiels' offer contained no such term. Affidavit of Thomas Abraham, ¶¶ 4–5 (copy attached as exhibit 4 to Defendants' Opening Brief (document no. 9)); Homebuyer's Inspection Contingency Addendum (annexed to Plaintiffs' Offer), ¶¶ 1(d) & 2(a) (copy attached as exhibit 2 to Defendants' Opening Brief (document no. 9)); Homebuyer's Inspection Contingency Addendum (annexed to Pfanstiels' Offer), ¶ 2(a) (copy attached as exhibit 3 to Defendants' Opening Brief (document no. 9)).

After reviewing both offers with Baisden, the Defendants instructed Baisden to take a counteroffer to the Pfanstiels, in the amount of $514,000. Affidavit of Baisden, ¶ 20 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)); affidavits of Thomas and Glenda Abraham, ¶ 6 (copies attached as exhibits 4 & 5 to Defendants' Opening Brief (document no. 9)). Baisden did so late on the evening of June 26. Affidavit of Baisden, ¶ 21 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)); Affidavit of James Pfanstiel, ¶ 5 (copy attached as exhibit 6 to Defendants' Opening Brief (document no. 9)); Affidavit of Priscilla Pfanstiel, ¶ 5 (copy attached as exhibit 7 to Defendants' Opening Brief (document no. 9)).[19] The Pfanstiels agreed to the Defendants' price, and the contract was fully executed. Affidavit of Baisden, ¶ 21 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)); Affidavit of James Pfanstiel, ¶ 5 (copy attached as exhibit 6 to Defendants' Opening Brief (document no. 9)); Affidavit of Priscilla Pfanstiel, ¶ 5 (copy attached as exhibit 7 to Defendants' Opening Brief (document no. 9)). The Pfanstiels accepted the Defendants' counteroffer late in the evening of June 26th. Supplemental affidavit of Thomas Abraham at ¶ 6 (copy attached as exhibit 2 to Defendant's Rebuttal Brief (document no. 23)).

At this point the Plaintiffs' offer was marked "Declined with thanks," and thereafter returned to the Plaintiffs. Affidavits of Thomas and Glenda Abraham, ¶ 8 (copies attached as exhibits 4 & 5 to Defendants' Opening Brief (document no. 9)); Affidavit of Baisden, ¶ 22 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)); Answer, exhibit A. The Plaintiffs subsequently submitted an offer to purchase the property with a price of $529,000, which the Defendants accepted in second position (i.e., to be performed if the Pfanstiel contract was cancelled or breached). Complaint, ¶ 34; Answer ¶ 34; Affidavits of Thomas and Glenda Abraham, ¶¶ 9 and 10 (copies attached as exhib-

19. This is the fifth dispute proffered by the Plaintiffs. At page 3 of their Opposition Brief (document no. 15), the Plaintiffs attempt to dispute that June 26 is the date on which the Defendants modified the Pfanstiel's offer. This fact is not material to the issues on summary judgment. Even if it were material, the Plaintiffs cite no record evidence to support their contention, in violation of Local Rule 56(B) ("A brief in response ... shall ... cit[e] to the parts of the record relied on to support the facts alleged to be in dispute."). The failure to cite to record evidence means that no dispute has been raised. Finally, any ambiguity in the record on whether the Defendants prepared the counteroffer on June 26 or June 27 is dispelled at ¶ 5 of the supplemental affidavit of Thomas Abraham (copy attached as exhibit 2 to Defendant's Rebuttal Brief (document no. 23)).

its 4 & 5 to Defendants' Opening Brief (document no. 9)).

In September, a closing was held at which time title to the subject property was delivered to the Pfanstiels.[20] The Plaintiffs' earnest money deposit from their second-position contract was returned to them. Affidavit of Baisden, ¶¶ 26 and 27 (copy attached as exhibit 1 to Defendants' Opening Brief (document no. 9)).[21]

### Standard of Review

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." *Doyle v. Sentry Insur.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other fact immaterial." *Id.* at 322, 106 S.Ct. 2548. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

### Analysis

The Fair Housing Act prohibits gender-based discrimination in the sale of a dwelling. 42 U.S.C. § 3604(a). This circuit has not yet addressed the issue of sexual discrimination in the context of fair housing under Title VIII. The Court, however, should examine the employment discrimination cases for guidance. *Pinchback v. Armistead Homes,* 907 F.2d 1447, 1451 (4th Cir.), *cert. denied,* 498 U.S. 983, 111 S.Ct. 515, 112 L.Ed.2d 527 (1990) ("Fair employment concepts are often imported into fair housing law."). To prevail, the Plaintiff must demonstrate that sex discrimination was a motivating factor (though not necessarily the sole motivating factor) in the allegedly violative action.

20. This is the sixth dispute proffered by the Plaintiffs. At pages 3–4 of their Opposition Brief (document no. 15) the Plaintiffs attempt to raise a dispute regarding the closing. The Plaintiffs contend that the Defendants and the Pfanstiels accelerated the date for the closing after learning that the Plaintiffs had filed a legal action to contest the sale. These assertions are immaterial to the issues on summary judgment. Also, the Plaintiffs cite no record evidence to support their contentions regarding the timing or the manner in which the closing was conducted (in violation of Local Rule 56(B)). For these reasons, the Court will not adopt these particular facts proffered by the Plaintiffs.

21. Plaintiffs on brief raised numerous complaints regarding the way Baisden discharged her responsibilities in the transaction. These complaints, however, are not material to the issues before the Court as Baisden was not made a party to the proceeding.

*U.S. v. Branella,* 972 F.Supp. 294, 298 (D.N.J.1997).

Plaintiffs may rely on either of two ways to assert their housing discrimination claim: (1) direct evidence of discriminatory intent; (2) using the three step approach set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Evans v. Technologies Applications and Service Company,* 80 F.3d 954 (4th Cir.1996) (Title VII case); *Wileman v. Frank,* 979 F.2d 30, 33 (4th Cir.1992) (Title VII case).

The Plaintiffs contend that the case presents both direct and circumstantial evidence of gender discrimination. The direct evidence, they contend, arises from the Defendants' reference to the Plaintiffs as "the girls" and from the Defendants' interest in Plaintiffs' financial status and the role that Winter's husband would play in the transaction.[22] The Defendants' reference to the Plaintiffs as "girls" may be distasteful, but it does not rise to the level of unlawful discrimination. The Defendants' concern with the Plaintiffs' financial standing is a legitimate concern for a seller who is assessing potential buyers of a half-million dollar resort property, presumably to be used as something other than a principal residence. For similar reasons, the Defendants' inquiries regarding Winter's husband are legitimate. The use of the term girls, the financial concern and the inquiry regarding Winter's husband, whether considered singly or in combination, are an insufficient proffer of direct evidence of unlawful discrimination.

The shortcomings in the Plaintiffs' direct evidence are magnified when the differences between the two offers are taken into account. The Pfanstiels offered more money for the property. They sought a shorter contingency period for a home inspection, thus requiring the Defendants to take the home off the market for ten days, not a month, before the contract became binding on the buyers. The Plaintiffs' offer required the Defendants to give Plaintiffs "reasonable access" (the term is not defined or limited in the offer) to the property even after the inspection period had ended; the Pfanstiels' offer did not. The Pfanstiels appeared to have a stronger interest in acquiring the property, evinced by their relatively quick decision and their higher bid. All of these factors are perfectly legitimate, nondiscriminatory considerations that the Defendants weighed in making the decision to send a counteroffer to the Pfanstiels instead of to the Plaintiffs.

The circumstantial, or indirect, evidence consists of the Defendants' refusal to negotiate with the Plaintiffs and concomitant willingness to negotiate with another buyer outside of the Plaintiffs' protected class. The Plaintiffs have chosen, therefore, to proceed with their direct evidence of discriminatory intent and to buttress their direct evidence with indirect evidence presented via the *McDonnell Douglas* framework. Normally, the McDonnell Douglas framework is irrelevant if the Plaintiffs present sufficient direct evidence of discriminatory intent. *Pinchback v. Armi-*

**22.** Most of this evidence was relayed to the Plaintiffs by Baisden. Baisden's statements made to Plaintiffs, regarding the Defendants' views, are admissible pursuant Fed. R. Evid. 801(d)(2)(D). The statements were made by an agent (Baisden) which are admissible against the principals (the Defendants) because the statements were made during the course of the agency (i.e. prior to the evening of June 26, 2002) and were made within the scope of the agency (i.e. the sale of the Defendants' property). Baisden's statements made to the Plaintiffs conveying remarks attributable to the Defendants are admissible pursuant to Fed. R. Evid. 801(d)(2)(A).

*stead Homes,* 907 F.2d 1447, 1452–53 (4th Cir.1990) (citing *U.S. Postal Service Board v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) & *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). It appears that the Plaintiffs' decision to pursue both methods of proof in this case is intended to provide an alternative means of proof in the event that the direct evidence proffered on discriminatory intent is found wanting in some respect.

The Court's assessment of the Plaintiffs' indirect evidence begins with the three steps of the *McDonnell Douglas* test, as follow: (1) Plaintiff-buyers must first prove a *prima facie* case of discrimination by a preponderance of the evidence; (2) Defendant-sellers then have the opportunity to present a legitimate, non-discriminatory reason for their decision to sell the parcel to another buyer; (3) if sellers do so, the burden shifts back to the Plaintiff-buyers, who must proffer evidence that the legitimate non-discriminatory reason proffered was merely pretext for discrimination. *Id.* To succeed, the Plaintiffs must adduce sufficient evidence both that the reason was false, and that discrimination was the real reason. *Vaughan v. Metrahealth Companies,* 145 F.3d 197 (4th Cir. 1998) (quoting *Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 201 (4th Cir. 1997)).

To establish a *prima facie* case of discrimination by a preponderance of evidence, the Plaintiffs must establish that: (1) they are members of a protected class; (2) they tendered a valid offer to purchase and were qualified to purchase the Defendant's parcel; (3) the Defendants rejected the Plaintiffs offer; and, (4) the Defendants thereafter offered the parcel for sale to others after having repudiated the offer tendered by the Plaintiffs. *U.S. Dep't of Housing and Urban Development v. Blackwell,* 908 F.2d 864, 870–71 (11th Cir. 1990).

The Plaintiffs' proffered evidence does meet the four elements of part one of the three part *McDonnell Douglas* test. However, the Defendants countered with a legitimate, nondiscriminatory reason that explains why they extended a counteroffer to the Pfanstiels but not to the Plaintiffs. The Defendants negotiated with the Pfanstiels in an effort to maximize their sale proceeds while minimizing their inconvenience. The Plaintiffs proffer no evidence of pretext. Accordingly, the Plaintiffs' indirect evidence fails to satisfy the three steps of the *McDonnell Douglas* test.

For these reasons, the Court **Grants** the Defendants' Motion for Summary Judgment on the First Cause of Action set forth in the Complaint (alleging violation of 42 U.S.C. § 3601, *et seq.*). The Second Cause of Action set forth in the Complaint is a state law claim alleging violation of Va. Code Ann. § 36–93.3. The Court, having found in the Defendant's favor on the federal claim in Count One, declines to exercise jurisdiction over the state law claim in Count Two. The Second Cause of Action set forth in the Complaint is, therefore, **Dismissed Without Prejudice.**

In their Opening Brief (document no. 9) the Defendants cite the fee shifting provision in the Fair Housing Act (42 U.S.C. § 3613(c)(2)) and move the Court to require the Plaintiffs to pay the Defendants' legal fees and costs. Section 3613(c)(2) provides in pertinent part as follows: "In a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." In an affidavit filed with the Court, Counsel for Defendant avers $21,712.50 in fees plus $348.95 in costs (document no. 41). The Plaintiffs have filed a Memorandum of Law in which they request an evidentiary

hearing for the purpose of providing "testimony from those persons who consulted with counsel about the merits of the claim of plaintiffs". Plaintiffs' Memorandum of Law in Support of Motion for Evidentiary Hearing, page 2 (document no. 39). The Plaintiffs' request for an evidentiary hearing on the fee-shifting issue is hereby GRANTED.

The Clerk is REQUESTED to send a copy of this Order to all counsel of record.

It is so ORDERED.